In the United States District Court
Eastern District of Arkansas
Central Division

John C. Neal                                                              Plaintiff

v.                         Case No. 4:20-cv-01034-LPR

McKendra Adams                                                   Defendant

## Plaintiff's Opposition to Defendant's Renewed Motion to Dismiss with Prejudice

In deciding Defendant McKendra Adams' motion to dismiss, the Court must

decide two issues.

**Standing.** No court has ever dismissed a consumer's claim for forum abuse under the FDCPA for lack of standing. And, the Seventh and Eleventh Circuits have held that consumers who do not receive verification-rights notice have standing to pursue FDCPA claims. Adams sued Neal in a county where he did not sign the contract or resided when the lawsuit was filed, objected to Neal's motion for improper venue, and never provided Neal with a verification rights notice. Shouldn't the Court find Neal has standing to pursue his claims under the FDCPA?

**Initial Communication.** The FDCPA broadly defines a communication as the conveying of information regarding a debt directly or indirectly to any person through any medium. The Seventh Circuit has held that a debt collector must send a 1692g notice to a represented consumer's attorney, which is supported by a majority of the Circuit Courts. Shouldn't the Court find that Adams' communications to Cheatham's attorney triggered her obligations to provide notices under the FDCPA and the AFDCPA?

### Procedural History

On December 15, 2020, Neal filed his First Amended Complaint for violations of

the Fair Debt Collection Practices Act (FDCPA).[1] On December 30, 2020, Adams

---

[1] Document 10.

renewed her motion to dismiss[2] and argues the Court should dismiss Neal's claims for lack of subject matter jurisdiction and for failure to state a claim under Rule 12(b)(1) and 12(b)(6), respectively. Neal files this opposition asking the Court to deny Adams' motion.

## Standard of Review and Factual Allegations

Adams' motion makes a facial attack on jurisdiction.[3] A facial attack challenges subject matter jurisdiction without disputing the facts alleged and requires the Court to treat the allegations as true.[4]

On August 9, 2017, Neal purchased a 2004 Fleetwood Prowler from National Travelers RV Center, a recreational vehicle dealership at 3205 Cimarron Drive, Conway, AR 72032.[5] National Travelers RV Center is in Faulkner County, Arkansas.[6] Cannon Fin. financed Neal's purchase through a Retail Installment Sale Contract (the Contract).[7] Neal signed the Contract at Great American Auto in Faulkner County, Arkansas.[8]

---

[2] Document 10.

[3] Documents 4 and 5.

[4] *Great Rivers Habitat Alliance v. Federal Emergency Management Agency*, 615 F.3d 985 (8th Cir. 2010).

[5] Document 10, ¶ 22; Document 10-1.

[6] Document 10, ¶ 23.

[7] Document 10, ¶ 24.

[8] Document 10, ¶ 25.

Neal allegedly defaulted on the Contract.[9] Cannon Fin. repossessed the 2004 Fleetwood Prowler.[10] On April 10, 2019, Cannon Fin. mailed Neal a Mandatory Notice of Private or Public Sale to the residential address listed on the Contract in Sherwood, Pulaski County, Arkansas.[11] Cannon Fin. sold the 2008 Buick Lucerne.[12]

On August 30, 2019, Adams filed a debt collection complaint in the District Court of Garland County, Arkansas, seeking deficiency judgment in the amount of $4,464.33 and attorney fees and court costs for a total of $5,060.76, with pre and post judgment interest.[13] On August 30, 2019, Adams had the Clerk of Court for the District Court of Garland County, Arkansas issue the Summons[14] to Neal at his residence in Pulaski County, Arkansas.[15] When Adams filed the Debt Collection Complaint in the District Court of Garland County, Arkansas, the only venues where Neal could be sued to collect the obligation was a judicial district within the geographical boundaries of Pulaski County, Arkansas.[16] Any venue provision in an Arkansas statute allowing Cannon Fin. to sue in the county where it resides is preempted by the FDCPA.[17]

---

[9] Id., ¶ 26.

[10] Id., ¶ 27.

[11] Document 10, ¶ 28; Document 10-3.

[12] Document 10, ¶ 29.

[13] Document 10, ¶ 30.

[14] Document 9-3.

[15] Document 10, ¶ 31.

[16] Document 10, ¶ 32.

[17] Document 10, ¶ 33, citing 15 U.S.C. § 1692n.

Neal was served with the debt collection complaint and summons.[18] Neal retained undersigned counsel to defend the debt collection lawsuit by asserting affirmative defenses based on improper venue and *forum non conveniens*, and by filing a motion to dismiss based on Adams filing suit in a judicial district that did not comply with the FDCPA.[19] Neal made monthly payments to his attorney to pay his attorney fee to defend the debt collection litigation by asserting affirmative defenses based on improper venue and *forum non conveniens*, and by filing a motion to dismiss based on Adams filing suit in a judicial district that did not comply with the FDCPA.[20]

On October 23, 2019, Neal timely filed and served his Answer.[21] On October 23, 2019, Neal filed a motion to dismiss for improper venue or *forum non conveniens*.[22] The motion was supported by Neal's affidavit that stated he had lived at the same address in Pulaski County, Arkansas for the last 26 years, that he signed the contract at issue while he was at National Travelers RV in Conway, Faulkner County, Arkansas, and that he purchased and used the 2004 Fleetwood Prowler solely for personal, household, and family purposes.[23]  The motion to dismiss argued that the FDCPA, 15 U.S.C. § 1692i, preempted any state venue statute, and that the debt collection complaint filed by Adams in Garland County, Arkansas should be dismissed without

---

[18] Document 10, ¶ 34.

[19] Document 10, ¶ 35.

[20] Document 10, ¶ 36, Document 9-4.

[21] Document 10, ¶ 37, Document 10-5, ¶¶ 6-7.

[22] Document 10, ¶ 38, Document 10-6.

[23] Document 10, ¶ 39.

prejudice on that basis.[24] On October 23, 2019, the District Court of Garland County, Arkansas, set Neal's motion for a hearing.[25] On October 30, 2019, Adams filed an opposition to Neal's motion to dismiss, and requested the Court deny Neal's motion to dismiss for improper venue or for *forum non conveniens*.[26]

Adams served the opposition to the motion to dismiss on Neal's attorney.[27] The service of the opposition to the motion to dismiss was Adams' "initial communication" with Neal as that term has been interpreted as used in 15 U.S.C. § 1692g(a).[28] Adams did not send Neal a written notice containing the information in 15 U.S.C. § 1692g(a)(1)-(5), within five days of this "initial communication" with Neal.[29]

On December 30, 2019, Adams produced documents to Neal through his attorney via email.[30] Alternatively, the email was Adams' "initial communication" with Neal as that term has been interpreted as used in 15 U.S.C. § 1692g(a).[31] Adams did not send Neal a written notice containing the information in 15 U.S.C. § 1692g(a)(1)-(5), within five days of this "initial communication" with Neal.[32]

---

[24] Document 10, ¶ 40, Document 10-6.

[25] Document 10, ¶ 41. Document 10-7.

[26] Document 10, ¶ 42, Document 10-8.

[27] Document 10, ¶ 43, Document 10-8.

[28] Document 10, ¶ 44.

[29] Document 10, ¶ 45.

[30] Document 10, ¶ 46; Document 10-9.

[31] Document 10, ¶ 47.

[32] Document 10, ¶ 48.

On January 8, 2020, Adams moved to dismiss the debt collection lawsuit without prejudice.[33] Adams served the motion to dismiss on Neal's attorney.[34]  Alternatively, the email was Adams' "initial communication" with Neal as that term has been interpreted as used in 15 U.S.C. § 1692g(a).[35] On January 9, 2020, the District Court entered and filed an order dismissing the debt collection lawsuit without prejudice.[36]

## Argument & Authorities

I.   **The Court should deny the motion to dismiss because Neal establishes that he has Article III standing.**

A.   *Standing is a basic element of any civil action filed in federal court.*

Article III of the United States Constitution limits a federal court to jurisdiction over "cases" or "controversies" between parties.[37] Article III standing consists of three elements:

> The plaintiff must have (1) suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.[38]

To establish the first element, an injury in fact, "a plaintiff must show that he … suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[39]

---

[33] Document 10, ¶ 49; Document 10-10.

[34] Document 10, ¶ 50.

[35] Document 10, ¶ 51.

[36] Document 9, ¶ 52; Document 10-11.

[37] U.S. Const. art. III, § 2.

[38] *Spokeo, Inc. v. Robins*, ____ U.S. ____, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016).

[39] *Id*. at 1548.

**B.    *The Supreme Court interpreted Article III's requirements.***

In its 2016 decision *Spokeo, Inc. v. Robins*,[40] the Supreme Court for the first

time addressed constitutional standing in a case under the federal Consumer Credit

Protection Act, the Act that includes the FDCPA. The primary claim was a violation of a

requirement of the Fair Credit Reporting Act (FCRA) that consumer reporting agencies

"follow reasonable procedures to assure maximum possible accuracy of" consumers'

reports.[41]

The *Spokeo* decision focused on the injury-in-fact element of standing. It held

that, although the Ninth Circuit Court of Appeals correctly held that the particularity

requirement[42] was met, it "overlooked" the concreteness requirement.[43] As a result,

the Court remanded the case to the Ninth Circuit for completing the standing analysis.

In its analysis of the concreteness requirement, the Supreme Court reaffirmed

that intangible injuries can be concrete and that history and congressional judgment

both play important roles in determining which intangible harms constitute an injury in

fact.[44] Regarding history, the Court noted that "[b]ecause the doctrine of standing

derives from the case-or-controversy requirement, and because that requirement in

turn is grounded in historical practice, it is instructive to consider whether an alleged

---

[40] ____ U.S. ____, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016).

[41] 15 U.S.C. § 1681e(b).

[42] For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."
*Spokeo, Inc. v. Robins,* ____ U.S. ____, 136 S. Ct. 1540, 1548, 194 L. Ed. 635 (2016).

[43] *Id.*

[44] *Id.* at 1549.

intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."[45] An example mentioned by the Court is slander,[46] which is actionable because it is inherently damaging without showing actual damage to reputation, an intangible interest. Similarly, Justice Thomas, concurring, observed that, "[m]any traditional remedies for private-rights causes of action-are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right."[47] A harm can be actionable even if it is "difficult to prove of measure."[48]

Spokeo also recognizes that Congress "may elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." The Court held that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements, [and] its judgment is also instructive and important."[49] Nevertheless, the Court stated that "Article III standing requires a concrete injury even in the context of a statutory violation."[50] Analogizing to tort law, the Court also confirmed that a "risk of real harm" is sufficient to satisfy concreteness.[51]

---

[45] Id.

[46] Id.

[47] Id. at 1551.

[48] Id. at 1549.

[49] Id.

[50] Id. (internal citations and quotations omitted). See also Frank v. Gaos, ____ U.S. ____, 139 S. Ct. 1041, 203 L. Ed. 2d 404 (2019) (per curiam) (reiterating that Spokeo rejects the view that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right).

[51] Id. at 1549.

The Court added that deprivation of a "bare procedural right, divorced from any concrete harm" would not establish standing.[52] Nonetheless, the Supreme Court noted that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute an injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified."[53] The Court gave as examples the right to information that Congress had decided should be made public.[54]

C.    *The great majority of decisions in the first four years after Spokeo have held consumers have standing to raise FDCPA claims alleging violations of sections 1692g and 1692e(11).*

Most courts have had little difficulty finding that a failure to give a consumer the information required by section 1692e(11) and section 1692g is a concrete harm. The first major decision was *Church v. Accretive Health, Inc.*,[55] in which the Eleventh Circuit held that failure to give the consumer section 1692e(11) and section 1692g notices was an injury in fact:

> The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled. While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete. *See Spokeo, Inc.*, 578 U.S. at ____, 136 S. Ct. at 1549; *Havens Realty Corp.*, 455 U.S. at 373.

---

[52] *Id.*

[53] *Id.*

[54] *Id.* at 1549-1550 (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III) and *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) (holding that two advocacy organizations' failure to obtain information subject to dislosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue")).

[55] 654 Fed. Appx. 990 (11th Cir. 2016).

Rather, this injury is one that Congress has elevated to the status of a
legally cognizable injury through the FDCPA. Accordingly, Church has
sufficiently alleged that she suffered a concrete injury, and thus, satisfies
the injury-in-fact requirement.[56]

The court further distinguished *Spokeo* as involving a procedural right, whereas

Church had alleged violation of the substantive right to receive the FDCPA disclosures

and that the defendant violated that substantive right.[57]

The Second Circuit has likewise held in both published and unpublished

decisions that violating the FDCPA protections found in section 1692g is a concrete

injury. In *Papetti v. Does 1-25*,[58] an early unpublished decision, the court held that the

section 1692g notice furthers an individual's concrete interest to be free from abusive

debt collection practices because it allows a consumer to confirm that they owe a debt

before paying the debt. The court therefore concluded that providing a notice with

legally deficient warnings and advisories entailed the concrete injury necessary for

standing. In a second unpublished decision, *Zirogiannis v. Seterus, Inc.*,[59] the Court

held that failure to give a consumer a section 1692g notice that adequately specifies

the amount of the debt is a concrete injury. The Court noted that Congress enacted the

FDCPA to protect consumers from abusive debt collection practices. It reiterated that

the requirement of a detailed validation notice furthers this purpose by enabling the

---

[56] *Id. at 994*. The Eleventh Circuit then dismissed the case, finding that the defendant was exempt
under section 1692a(6)(F)(iii).

[57] *Id.* at n.2.

[58] *Papetti v. Does 1-25*, 691 Fed. Appx. 24 (2d Cir. 2017)("[s]ection 1692g furthers [the FDCPA's]
purpose by requiring a debt collector who solicits payment from a consumer to provide that consumer
with a 'detailed validation notice,' which allows a consumer to confirm that he owes the debt sought by
the collector before paying it; [T]he FDCPA violations alleged by Pappetti, taken as true, "entail the
concrete injury necessary for standing."

[59] 707 Fed. Appx. 724 (2d Cir. 2017).

consumer to "confirm that he indeed owes the deb sought by the collector and its amount before paying it."[60]

In a 2018 published decision, *Cohen v. Rosicki, Rosicki & Assocs., P.C.*,[61] the Second Circuit explicitly endorsed the views expressed in the two earlier decisions. The court held that section 1692g protects concrete interests, so an alleged violation satisfies the injury-in-fact requirement. The court noted that the collector's allegedly incorrect identification of the creditor in the foreclosure proceeding, posing a "'risk of real harm' insofar as it could hinder the exercise of his right to defend or otherwise litigate that action."[62]

The Sixth Circuit has taken the same approach. In *Macy v. GC Services L.P.*,[63] it held that a debtor had Article III standing to assert a claim that a validation notice violated the FDCPA because it failed to state that the creditor had to provide additional information about the creditor and the debt only if the debtor disputed the debt in writing. The Court treated this as a procedural violation but held that one created a risk of real harm to a concrete interest, so the plaintiff did not need to allege any additional harm beyond the one Congress had identified. It stressed that the plaintiffs had alleged the collector's failure to mention the need for the dispute to be in writing could lead consumers to waive the important protections provided by section 1692g. The

---

[60] Id. at 727.

[61] 897 F.3d 75 (2d Cir. 2018).

[62] *Id.* at 81.

[63] 897 F.3d 747 (6th Cir. 2018).

court also held that the collector's alleged policy of honoring verbal disputes went to

the merits of the consumers' claim, no their Article III standing.

More recently, in *Lavelle v. Med-1 Solutions, L.L.C.*, the Seventh Circuit found

Article III standing where a consumer alleged a debt collector failed to give the

consumer the section 1692g notice.[64]

Other courts have similarly found Article III standing where the consumer alleged

the collector failed to:

- Disclose the amount of the debt in violation of section 1692g(a)(1);[65]

- Identify the current creditor, in violation of section 1692g(a)(2);[66]

---

[64] ____ F.3d ____, 2019 WL 3720875 (7th Cir., Aug. 8, 2019); *see also Somerset v. Stephen Einstein & Assoc.*, 351 F. Supp. 3d 201, 207 (E.D.N.Y. 2019); *Cohen v. Ditech Fin., L.L.C.*, 342 F. Supp. 3d 460 (S.D.N.Y. Sept. 21, 2018) (finding standing for claim that mortgage field service company's door hanger notice failed to include the disclosures required by § 1692g, but dismissing claim on merits); *Stinson v. Nat'l Credit Systems Inc.*, 2018 WL 3954764, at *6 n.6 (N.D. Ga. June 26, 2018); *Geary v. Green Tree Servicing, L.L.C.*, 2017 WL 2608691 (S.D. Ohio June 16, 2017) (finding standing to assert claim that initial communication did not contain § 1692g disclosures, which "go to the heart of the FDCPA"; noting that these plaintiffs would have disputed the debt, and did so once they received the § 1692g disclosures).

[65] *Zirogiannis*, 707 Fed. Appx. 724; (2d Cir. 2017) (violation of requirement to give debtor a notice that adequately specifies the amount of the debt is a concrete injury; violation creates material risk that debtor will fall victim to the abusive debt collection practices that Congress passed the FDCPA to prevent); *Beane v. RPW Legal Services, P.L.L.C.*, 378 F. Supp. 3d 948 (W.D. Wash. 2019) (finding standing; collector's uncertain and varying statements about the amount of the debt negatively impacted debtor's ability to dispute it or make an intelligent decision on whether to settle it); *Byrne v. Oregon One, Inc.*, 2017 WL 3568412 (D. Or. July 18, 2017) (failure to state current amount of the debt, including interest, created risk that consumer would pay wrong amount), adopted, 2017 WL 3568398 (D. Or. Aug. 16, 2017); *Balke v. Alliance One Receivables Mgmt., Inc.*, 2017 WL 2634653 (E.D.N.Y. June 19, 2016) (no need to plead facts showing an injury beyond the statutory violation itself).

[66] *Hargis v. Equinox Collection Services, Inc.*, 2019 WL 2341662 (N.D. Okla. June 3, 2019) (consumer has standing even if he did not experience confusion about the creditor's identity); *Ferris v. Transworld Systems, Inc.*, 2018 WL 701285 (N.D. Ill. Jan. 31, 2018) (misstatement about identity of current creditor creates risk that consumer will be deceived into paying debt he does not know or wishes to dispute); *Huyghue v. Shafritz & Assoc., P.A.*, 2018 WL 7457827 (M.D. Fla. Apr. 12, 2018) (violation of right to receive this disclosure is concrete injury); *Degrasse v. Fin. Recovery Services, Inc.*, 2018 WL 2214651 (E.D.N.Y. Mar. 5, 2018) (finding standing but denying claim on the merits); *Byrne v. Oregon One, Inc.*, 2017 WL 3568412, at *9 (D. Or. July 18, 2017) (failure to disclose current creditor created risk that consumer would pay someone who did not legitimately own the debt), adopted, 2017 WL 3568398 (D. Or. Aug. 16, 2017); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773 (S.D. Ind. 2016); *Janetos v. Fulton Friedman & Gullace, L.L.P.*, 2016 WL 9446140 (N.D. Ill. Sept. 21, 2016) (denial of statutorily-required information, here disclosure of name of creditor, is concrete harm as a matter of law); *Bell v. Adler Wallach & Assoc., Inc.*, 2016 WL 11583377 (W.D. Tex. Sept. 15, 2016).

- Make the required disclosures accurately, clearly, and without omissions;[67]

- State accurately the steps the consumer must take to dispute the debt, such as whether the dispute must be in writing;[68] or

---

[67] *Cohen*, 897 F.3d at 82 n.6; *Papetti*, 691 Fed. Appx. 24 finding standing where claim was that warnings and advisories in § 1692g notice were legally inadequate); *Oloko v. Receivable Recovery Services, L.L.C.*, 2019 WL 3889587 (N.D. Ill. Aug. 19, 2019) (claim that collection letter sent during 30-day validation period, demanding immediate payment, overshadowed validation notice involves inaccurate information; plaintiff has standing); *Untershine v. Encore Receivable Mgmt., Inc.*, 2019 WL 3766564, at *3 (E.D. Wis. Aug. 9, 2019) (finding standing where collection letter allegedly overshadowed validation notice by inviting consumer to call if payment had already been made; distinguishing 7th Circuit decision on the ground that this is a claim of misinformation rather than non-disclosure); *Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731 (E.D. Mich. 2017) (holding that consumer has standing to assert several claims, one of which alleged that debt collection letters contained material that overshadowed dispute rights); *Byrne v. Oregon One, Inc.*, 2017 WL 3568412 (D. Or. July 18, 2017) (finding standing in case alleging overshadowing and failure to disclose that dispute must be in writing), adopted, 2017 WL 3568398 (D. Or. Aug. 16, 2017); *Matute v. A.A. Action Collection Co.*, 2017 WL 2573714 (D.N.J. June 13, 2017) (finding standing where plaintiff alleged that defendant mailed collection letters that did not comply with § 1692g); *Reed v. Receivable Recovery Services, L.L.C.*, 2017 WL 1399597 (E.D. La. Apr. 19, 2017) (finding standing; claims include failure to make disclosures required by § 1692g), aff'd, 706 Fed. Appx. 239 (5th Cir. 2017); *Allah-Mensah v. Law Office of Patrick M. Connelly, P.C.*, 2016 WL 6803775 (D. Md. Nov. 17, 2016) (misstatement of § 1692g rights—here, the extent to which debt will be assumed valid if consumer does not contest it—is concrete, especially in the context of this letter, which stresses the negative consequences such as garnishment that flow from a valid debt; noting at *8 that this violation "presents a material risk that the consumer would be misled into believing that the consumer has no right to challenge the debt after thirty days"); *Lee v. Select Portfolio Servicing, Inc.*, 2016 WL 9275411 (N.D. Ga. Aug. 25, 2016) (finding standing for claim that § 1692g notice was overshadowing); *Lane v. Bayview Loan Servicing, L.L.C.*, 2016 WL 3671467 (N.D. Ill. July 11, 2016) (consumer has standing to assert claim that other material in collection letter overshadowed validation notice); *Balke v. Alliance One Receivables Mgmt., Inc.*, 2017 WL 2634653 (E.D.N.Y. June 19, 2016) (no need to plead facts showing an injury beyond the statutory violation itself, here overshadowing of notice of right to dispute the debt).

[68] *Macy*, 897 F.3d 747; (finding standing; failure of § 1692g notice to specify that dispute must be in writing creates risk of unintentional waiver of FDCPA's debt validation rights); *Hargis v. Equinox Collection Services, Inc.*, 2019 WL 2341662 (N.D. Okla. June 3, 2019) (right to dispute a debt is the most fundamental of those set forth in § 1692g(a); failure to provide accurate information about how to do so creates risk that consumers will forgo disputing the debt and lose important protections); *Kausar v. G.C. Services L.P.*, 2017 WL 5175596 (D.N.J. Nov. 8, 2017); *Byrne v. Oregon One, Inc.*, 2017 WL 3568412 (D. Or. July 18, 2017) (failure to disclose that dispute must be in writing created risk that consumer would dispute debt by phone, which would not trigger collector's statutory duties to verify debt and cease collection), adopted, 2017 WL 3568398 (D. Or. Aug. 16, 2017); *Schweer v. HOVG, L.L.C.*, 2017 WL 2906504 (M.D. Pa. July 7, 2017) (letter advised consumer to call to dispute the debt, overshadowing the § 1692g notice); *Jones v. Advanced Bur. of Collections, L.L.P.*, 317 F.R.D. 284, 289 n.2 (M.D. Ga. 2016) (finding standing for claim that § 1692g notice failed to indicate that request for verification must be in writing); *Dickens v. GC Services L.P.*, 2016 WL 3917530 (M.D. Fla. July 20, 2016) (failure to state that dispute must be in writing to trigger collector's duty to verify debt), later op. after remand, 336 F. Supp. 3d 1369 (M.D. Fla. 2018) (reiterating conclusion that debtor has standing). *See also Kimble v. W. Ray Jamieson, P.C.*, 2018 WL 814225 (W.D. Tenn. Feb. 9, 2018) (failure to specify that dispute must be in writing in order to trigger collector's duty of verification, as

- Perform its affirmative duties upon receipt of a dispute.[69]

Similarly, courts have had little trouble finding standing when consumers allege a violation of section 1692e(11). Even if the consumer discloses no personal information to the debt collector, a violation of section 1692e(11) represents Congress's judgment that this injury is sufficiently concrete to confer standing. The failure to provide the proper section 1692e(11) disclosures creates the real risk that the consumer may unwittingly disclose sensitive personal information,[70] and this risk of harm is sufficient to confer standing.[71] Failure to disclose the debt collection purpose of the contact deprives the consumer of information that would augment the consumer's ability to chart a course of action in response to the collection effort.[72] Moreover, section 1692e(11) requires information to be given to the consumer, and

---

required by § 1692g(a)(4), creates material risk of harm, so plaintiff has standing, but collector's allegedly false statement that dispute must be in writing to prevent collector from assuming that debt is valid does not cause concrete injury where collector will honor written or oral disputes; failing to consider whether this latter violation might deter disputes).

[69] *Morgan v. Vogler Law Firm, P.C.*, 2017 WL 4387351 (E.D. Mo. Oct. 3, 2017); *Ghanta v. Immediate Credit Recovery, Inc.*, 2017 WL 1423597, at *4 (N.D. Tex. Apr. 8, 2017) (collector's failure to deliver verification of debt by mail, and its re-initiation of collection activities without doing so, is concrete harm); *Bartl v. Enhanced Recovery Co.*, 2017 WL 1740152 (D. Minn. May 3, 2017).

[70] *See, e.g., Romine v. Diversified Collection Services*, 55 F.3d. 1142 (9th Cir. 1998) (Western Union provided consumer's telephone number to debt collector after it confirmed the telephone number with consumer after tricking consumer to call for delivery of a "personal telegram").

[71] *See, e.g., Somerset v. Stephen Einstein & Assoc.*, 351 F. Supp. 3d 201. 207 (E.D.N.Y. 2019) (finding standing); *Beane v. RPW Legal Services, P.L.L.C.*, 378 F. Supp. 3d 948 (W.D. Wash. 2019); *Dreisen v. RSI Enters. Inc.*, 2019 WL 283646 (D. Ariz. Jan. 22, 2019).

[72] *Beane v. RPW Legal Services, P.L.L.C.*, 378 F. Supp. 3d 948, 955 (W.D. Wash. 2019); *Dreisen v. RSI Enters. Inc.*, 2019 WL 283646, at *2 (D. Ariz. Jan. 22, 2019). *See also Girdler v. Convergent Outsourcing, Inc.*, 2016 WL 7479541 (D. Mass. Dec. 29, 2016) (noting that nondisclosure impairs consumer's ability to make fair decisions about how to respond).

there is strong authority that the denial of access to information required by statute is a concrete injury under Article III.[73]

As the Senate concluded when it enacted the FDCPA, "the vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen even such as unemployment, overextension, serious illness, or marital difficulties or divorce."[74] Viewed through this lens, the section 1692e(11) requirements provide struggling consumers with essential information to help them balance immediate expenses such as rent, medical care, food, transportation, and clothing with demand for repayment of past debts.

D.   *Adams' violation of section 1692g and 1692e(11) caused Neal concrete harm.*

The rights and obligations established by 15 USC § 1692g were considered by the Senate at the time of passage to be a "significant feature" of the FDCPA.[75] Congress enacted section 1692g to protect consumers' concrete interest in avoiding abusive debt collection practices, including dunning the wrong person, and attempting

---

[73] *See, e.g., Dreisen v. RSI Enters. Inc.*, 2019 WL 283646 (D. Ariz. Jan. 22, 2019) (finding standing; requirement that collector disclose its purpose in initial communication was enacted to protect concrete interests, not procedural rights; it augments a debtor's ability to chart a course of action); *Yergovich v. Small Community Specialists L.L.C.*, 337 F. Supp. 3d 635 (E.D. Va. 2018) (finding standing for FDCPA claims, including one involving failure to make required disclosures; plaintiff alleged emotional distress); *Marquez v. Weinstein, Pinson & Riley, P.S.*, 2017 WL 4164170 (N.D. Ill. Sept. 20, 2017) (FDCPA establishes enforceable right to accurate information about the debt; plaintiff has standing even if not actually deceived), later op. at 2019 WL 1787547 (N.D. Ill. Apr. 24, 2019) (reaffirming at summary judgment stage that consumer has standing); *Byrne v. Oregon One, Inc.*, 2017 WL 3568412 (D. Or. July 18, 2017) (courts have Art. III jurisdiction over FDCPA violations involving misstatements and nondisclosure because these are informational injuries), adopted, 2017 WL 3568398 (D. Or. Aug. 16, 2017); *Carter v. CACH, L.L.C.*, 2016 WL 11581052, at *9 (N.D. Ga. Nov. 30, 2016) (Mag.) ("where Congress passes a statute with the purpose of giving an individual the right of access to particular information, any violation of that right is a concrete injury"), adopted, 2016 WL 11581047 (N.D. Ga. Dec. 27, 2016).

[74] S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, reprinted in 1977 U.S.C.C.A.N. 1695.

[75] S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, reprinted in 1977 U.S.C.C.A.N. 1695, 1696.

to collect debts which the consumer has already paid or does not owe.[76] Congress

enacted section 1692g to protect consumers' concrete interest in avoiding abusive

debt collection practices.[77]

Initial section 1692g disclosures help consumers determine whether a debt

collector is legitimate, whether the debt is the consumer's, whether the debt is for the

correct amount, or even whether the consumer owes the debt at all. The disclosures

required by § 1692g also inform consumers of their verification rights so that they can

inquire further about the identity of the original creditor and the amount of the debt.

Here, Adams never sent Neal any notice of his rights under section 1692g, even

though Adams had sued Neal to collect a debt he did not owe and litigated the debt

collection case for over five months. Adams failure to provide Milwood with a notice of

his rights under section 1692g during the course of the litigation put him at a real risk

of tangible harm (i.e., that he would decide to pay a debt he did not owe). Such a real

risk of harm easily satisfies the concreteness requirement of Article III standing,

especially considering the Second Circuit in *Church* and the Seventh Circuit in *Lavelle*

found Article III standing where consumers were not provided the section 1692g

notice.

Even still, consumers can demonstrate the injury-in-fact element of standing

through intangible injuries.[78] Where a deceptive statement or failure to make a

required disclosure does not cause tangible harm, one of two approaches that *Spokeo*

---

[76] *Id.*

[77] *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir. 2018); *Macy v. GC Services L.P.*, 897 F.3d 747, 757-758 (6th Cir. 2018).

[78] *Spokeo, Inc.*, ____ U.S. ____, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635.

recognizes to establish standing is to show that the intangible harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."[79] A violation of 1692g is analogous to a suit for an accounting at common law because both provide an aggrieved party the right to information important to them.

The Court should find that Neal has standing under Article III of the U.S. Constitution and that the Court has subject-matter jurisdiction over his claim for violations of the FDCPA.

**E.    Neal establishes that he has standing to raise FDCPA claims alleging violations of section 1692i.**

Section 1692i prohibits venue abuse—the collection tactic whereby debt collectors like Adams sue a consumer in an inconvenient forum to easily obtain a default judgment.  In cases involving section 1692i violations, the concreteness requirement for standing is easily established when a consumer demonstrates tangible harm because of a collection lawsuit filed in the wrong venue. Consumers who show they incurred attorney fees to defend against a lawsuit in a distant forum establish the concreteness requirement for standing.

Consumers may also establish intangible harms caused by violations of section 1692i to establish standing.[80]  An intangible harm may be concrete if it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."[81]  Violations of section 1692i meet this

---

[79] ____ U.S. ____, 136 S.Ct. 1540, 1548, 194 L. Ed. 635.

[80] *Spokeo*, ____ U.S. ____, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016).

[81] Id.

standard because they resemble the common law doctrine of *forum non conveniens*, which allowed for dismissal of a case due to improper venue. Moreover, filing collection lawsuits in distant forums presents a real risk of harm: consumers will either incur additional time and expense to travel to the inconvenient forum or defend themselves and risk the entry of a default judgment.

The *Spokeo* court identified a second way that an intangible injury may be concrete: "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before."[82] Congress did so when it enacted section 1692i. When it enacted the FDCPA, Congress included section 1692i because it was concerned with abusive practices by debt collectors filing collection lawsuits in distant forums. Senate Report No. 95-382 explained that:

> This legislation also addresses the problem of "forum abuse," an unfair practice in which debt collectors file suit against consumers in courts which are so distant or inconvenient that consumers are unable to appear. As a result, the debt collector obtains a default judgment and the consumer is denied his day in court.[83]

Section 1692i unequivocally prohibits this practice, and the FDCPA makes it actionable.

The concerns that prompted Congress to define forum abuse as an injury redressable by consumers are underscored by the Sevent Circuit in *Suesz v. Med-1 Solutions, L.L.C.*, which emphasized that forum abuses continue to be a problem in debt collection lawsuits:

---

[82] *Spokeo* ____, U.S. ____, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2106) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

[83] S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, reprinted in 1977 U.S.C.C.A.N. 1695.

[a]s this case illustrates, one common tactic for debt collectors is to sue in a court that is not convenient to the debtor, as this makes default more likely; or in a court perceived to be friendly to such claims; or, ideally, in a court having both of these characteristics. In short, debt collectors shop for the most advantageous forum. By imposing an inconvenient forum on a debtor who may be impecunious, unfamiliar with law and legal processes, and in no position to retain a lawyer (and even if he can afford one, the lawyer's fee is bound to exceed the debt itself), the debt collector may be able to obtain through default a remedy for a debt that the defendant doesn't actually owe.[84]

The first post-*Spokeo* decision to address the question had no trouble determining that venue abuse caused the consumer a concrete injury. In *Linehan v. Allianceone Receivables Management, Inc.*,[85] a collector sued a consumer in the wrong subdivision of the county court. The court held that, since Congress had defined being sued in a distant forum as a legally cognizable harm, the violation of this right constituted injury in fact: "The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury."[86]

In comparison to these cases, Adams does not cite a single case where a district court dismissed a consumer's FDCPA claim under section 1692i for lack of standing.

Here, not only did Neal retain and pay an attorney to answer the debt collection lawsuit, he moved to dismiss the lawsuit for improper venue. Even after Neal made it clear Adams violated the FDCPA when she sued him in a distant forum, Adams opposed a dismissal of the debt collection without prejudice so that the debt collection

---

[84] *Suesz v. Med-1 Solutions, L.L.C.,* 757 F.3d 636, 639 (7th Cir. 2014).

[85] 2016 WL 4765839 (W.D. Wash. Sept. 13, 2016).

[86] Id. at *8.

lawsuit could be refiled in a court within Pulaski County, Arkansas – the only legal

venue under the FDCPA for Adams to sue Neal.

For these reasons, Neal easily establishes that he has standing to pursue his

FDCPA claim under section 1692i for venue abuse against Adams.

## II. The Court should deny Adams' motion to dismiss under Rule 12(b)(6) because either Adams' motions in the debt collection case or her email communications with Neal's attorney are communications that triggered her obligation to provide the required notices.

Adams argument for dismissal that her obligation to comply with 1692g and

1692e(11) was never triggered because she only communicated with Neal's attorney,

and not Neal directly. Adams' argument is against the text of the FDCPA, Eighth Circuit

precedent, and the vast majority of FDCPA jurisprudence.

First, Adams' motions filed in the debt collection litigation are not "formal

pleadings"[87] as defined by the FDCPA. The Arkansas Rules of Civil Procedure define

define "pleadings" and "motions" distinctly:

(a) **Pleadings Allowed.** There shall be a complaint and an answer; a counterclaim; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third party answer, if a third party complaint is served. No other pleadings shall be allowed.

(b) **Motions and Other Papers.**

(1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

(2) All motions required to be in writing and any responses and replies shall include a brief supporting statement of the factual and legal basis for

---

[87] 15 U.S.C. § 1692g(d).

the motion, response, or reply and the citations relied upon. Any supporting affidavits shall be served with the motion, response, or reply. Failure to satisfy these requirements shall be ground for the court's striking the motion, response, or reply. The court is not required to grant a motion solely because no response or brief has been filed.

(3) The rules applicable to captions, signings, and other matters of form of pleadings by Rules 10(a) and 11(a) apply to all motions and other papers provided for by these rules.

(4) The procedure for submitting a potentially dispositive motion to the circuit court for decision, both with and without a hearing, is outlined in Administrative Order Number 3(2)(B).[88]

The only "pleadings" filed in the debt collection litigation were the complaint Adams filed and the Answer Neal filed. The debt collection complaint Adams filed and served did not trigger her obligation to provide Neal with the notice required by section 1692g, but either the response to the motion to dismiss or motions she filed after Neals' answer or her email communications with Neals' attorney did.

The FDCPA defines "communication" broadly:

(2) The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.[89]

Thus, under the plain definition of a "communication" as defined by the FDCPA, within five days after Adams' initial "conveying of information regard a debt directly or indirectly to any person through any medium," she was required to provide a verification rights notice.

---

[88] Ark. R. Civ. P. 6.

[89] 15 U.S.C. § 1692a(6). The AFDCPA has an identical definition of "communication." Ark. Code Ann. § 17-24-502(1).

Certainly, responding to Neal's discovery requests in debt collection litigation with information regarding the debt she had sued him over, qualifies as a "communication" as defined by the FDCPA.

Caselaw also provides context to Neal's claim that Adams triggered her obligation to provide the notices required by the FDCPA when she communicated about the debt with Neal's attorney. In fact, the Seventh Circuit has explicitly ruled that communications with a consumer's attorney triggers a debt collectors' obligation to provide a verification rights notice.[90]

Five Circuit Courts of Appeal have held that the FDCPA applies to and regulates communications from a debt collector to the consumer's lawyer: the Fourth Circuit in *Sayyed v. Wolpoff & Abramson*,[91] the Seventh Circuit in *Evory v. Nat'l Action Fin. Services, Inc.*,[92] the Eighth Circuit in *Powers v. Credit Mgmt. Services, Inc.*,[93] the Tenth Circuit in *Dikeman v. Nat'l Educators, Inc.*,[94] and the Eleventh Circuit in *Miljkovic v. Shafritz & Dinkin, P.A.*[95] The Ninth Circuit is the only Circuit Court of Appeals to explicitly hold otherwise in *Guerrero v. RJM Acquisitions L.L.C.*[96] The Second Circuit has taken care to clarify that it has "not ruled on whether an FDCPA claim may be

---

[90] *Evory v. Nat'l Action Fin. Services, Inc.*, 505 F.3d 769 (7th Cir. 2007).

[91] 485 F.3d 226 (4th Cir. 2007).

[92] 505 F.3d 769 (7th Cir. 2007).

[93] 776 F.3d 567 (8th Cir. 2015).

[94] 81 F.3d 949 (10th Cir. 1996).

[95] 791 F.3d 1291 (11th Cir. 2015).

[96] *Guerrero v. RJM Acquisitions L.L.C.*, 499 F.3d 926, 939 (9th Cir. 2007). The Court should also note that *Guerrero* was not a unanimous decision and contained a dissenting opinion.

brought for misrepresentations made to third parties."[97] In *Heintz v. Jenkins*,[98] the U.S. Supreme Court assumed a settlement letter sent to the consumer's attorney was covered by the FDCPA.

The other Circuits' explanation of why *Guerrero* was wrong are compelling. The Fourth Circuit in *Sayyed* reached the opposite conclusion of *Guerrero*:

> First, [the collection law firm] W & A argues that FDCPA liability cannot attach to communications made by a debt collection attorney to a debtor's counsel, rather than to the debtor. But the statute defines "communication" broadly as "the conveying of information regarding a debt directly or indirectly to any person through any medium." A communication to debtor's counsel, regarding a debt collection lawsuit in which counsel is representing the debtor, plainly qualifies as an indirect communication to the debtor. Furthermore, in a section entitled "Communication in connection with debt collection," the statute provides that, if the debt collector knows the debtor is represented by an attorney in connection with the debt, and if the debt collector can readily ascertain the attorney's contact information, the debt collector may not communicate directly with the debtor, unless the debtor's attorney does not respond to a communication in a reasonable amount of time. This provision is but another indication that communications with a debtor's attorney with regard to the debt are "communications" as defined and regulated by the FDCPA—and that such communications must in fact be directed to the attorney under the terms of the statute.
>
> If the statute left any room for doubt about this issue, *Heintz* resolved it. *Heintz* itself involved a communication from a debt collection attorney to debtor Darlene Jenkins' counsel, not to Jenkins herself. The Supreme Court held that Jenkins had a cause of action under the FDCPA on the basis of statements contained within the letter to her counsel. Thus, plainly, the FDCPA covers communications to a debtor's attorney.[99]

---

[97] *Sykes v. Mel S. Harris Assoc. L.L.C.*, 780 F.3d 70, 97 n.6 (2d Cir. 2015).

[98] 514 U.S. 291, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995).

[99] *Sayyed*, 485 F.3d at 232–233 (internal citations omitted). *See Hagy v. Demers & Adams, L.L.C.*, 2013 WL 434053 (S.D. Ohio Feb. 5, 2013); *Polinsky v. Cmty. Health Partners Reg'l Health Sys.*, 858 F. Supp. 2d 891 (N.D. Ohio 2012); *Quesenberry v. Alliant Law Group, P.C.*, 2010 WL 1189457 (E.D. Tex. Mar. 5, 2010) (following *Sayyed* on deceptive fax sent to consumer's lawyer), adopted by 2010 WL 1189481 (E.D. Tex. Mar. 24, 2010). *See also Misleh v. Timothy E. Baxter & Assoc.*, 786 F. Supp. 2d 1330 (E.D. Mich. 2011) (communications to a debtor's counsel may give rise to viable claims under §§ 1692e and 1692f).

The Eleventh Circuit added that it would be strange for a consumer to lose the protections of the FDCPA by retaining a lawyer:

> A proper reading of the statutory text dictates that a debt collector's communications with a consumer's attorney, including those communications required by § 1692c, are subject to §§ 1692d–1692f of the Act to the same extent as a debt collector's communications with the consumer himself. . . . It would create an odd situation, indeed, if the fact that a consumer was represented by an attorney somehow excused the debt collector from otherwise observing the FDCPA's requirements.[100]

The Seventh Circuit sided with *Sayyed* in *Evory*. The unanimous *Evory* opinion, written by Judge Posner, followed the FDCPA's plain language, concluding that:

> [i]t would be passing odd if the fact that a consumer was represented excused the debt collector from having to convey to the consumer the information to which the statute entitles him.[101]

The unanimous court held that a debt collector must send the section 1692g notice to a represented consumer's attorney:

> [A]ny written notice sent to the lawyer must contain the information that would be required by the Act if the notice were sent to the consumer directly[.][102]

*Evory* also found that the initial communication which triggered the consumer's right to a section 1692g notice can be a communication to the consumer's attorney:

> All that this argument shows is how unsound it would be to suppose that a communication to a person's lawyer is not a communication to the person. It would make a consumer who had a lawyer worse off than one who did not, because neither he nor his lawyer would have a right to any of the information that the statute requires be disclosed to the consumer.[103]

---

[100] *Miljkovic*, 791 F.3d at 1302-1303. *Accord Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268 (11th Cir. 2016) ("We see no basis in the FDCPA to treat false statements made to lawyers differently from false statements made to consumers themselves[.]").

[101] 505 F.3d at 773.

[102] *Id.* (internal citations omitted).

[103] *Id.* at 777.

Eighth Circuit precedent supports decisions like *Evory* that a communication with a consumer's attorney should be considered a communication with the consumer. The Eighth Circuit in *Powers* found that the FCPA may apply to discovery requests made directly to a consumer's attorney.[104] Later, the Eighth Circuit in *Demarais v. Gurstel Chargo, P.A.*,[105] found that a debt collector's courtroom communication to the court, consumer, and consumer's attorney were actionable under the FDCPA. Also in *Demarais*, the Eighth Circuit concluded that a letter that would violate section 1692f(1) if sent to the consumer still violates the FDCPA if sent to the consumer's attorney,[106] a conclusion also reached by the Third Circuit in *Allen ex rel. Martin v. LaSalle Bank*.[107]

Given the plain text definition of "communication" under the FDCPA and the AFDCPA, the reasoning of the majority of the Circuit Court of Appeals, the Seventh Circuit's explicit holding in *Evory*, and the Eighth Circuit precedent consistent with *Evory*, Neal simply has the better argument that Adams' initial communication with his attorney-the email which provided information regarding the debt Adams' had sued Neal over-triggered Adams obligation to provide a verification rights and debt collection notices required by the FDCPA.

This conclusion is also supported by district court opinions holding that a debt collection attorney must provide the verification rights notice at the discovery stage or

---

[104] 776 F.3d 567 (8th Cir. 2015).

[105] 869 F.3d 685 (8th Cir. 2017).

[106] *Id.*

[107] 629 F.3d 364 (3d Cir. 2011).

motion state of litigation unless some other discussion triggers the notification requirement sooner. [108]

Neal has stated facts upon which the Court can grant him relief under the FDCPA, and the Court should deny Adams' motion to dismiss.

## Conclusion

This Court should follow the Seventh Circuit's decision in *Lavelle* and Eleventh Circuit's decision in *Church* and hold that a consumer who does not receive the notices required by the FDCPA, 15 U.S.C. § 1692g, has suffered an injury in fact and concrete harm that confers the consumer constitutional standing under Article III to pursue claims for violations of the FDCPA in federal court. Those cases are supported by precedent from other Circuit Courts finding that other consumers had Article III standing to pursue FDCPA claims when the verification rights notice required were provided to consumers, but in an inaccurate, false, or deceptive manner.

Furthermore, the Court should hold that Neal has standing to pursue his claims under section 1692i because he hired and paid an attorney to defend a lawsuit filed in a forum where he did not sign the contract or lived when he was sued, and Adams' opposed his motion to dismiss the debt collection lawsuit without prejudice so that the debt collection lawsuit could be filed in Pulaski County – the only county in which Adams could lawfully sue Neal to collect the debt at issue.

---

[108] *See e.g. Hauk v. LVNV Funding L.L.C.*, 2010 WL 4395395(D. Md. Nov. 5, 2010) (allegations that defendant submitted interrogatories to consumer in underlying state court collection action without providing FDCPA disclosures stated claim for violations of §§ 1692e(11) and 1692g since interrogatory is not automatically exempt as formal pleading).

The Court should also follow the Seventh Circuit's decision in *Evory* that a debt collector must send the section 1692g notice, even when a consumer is represented by an attorney. *Evory* is well grounded in the text of the FDCPA, which broadly define a "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium," and supported by Eighth Circuit precedent holding that a debt collector's communication to a consumer's attorney is also a communication to the consumer under the FDCPA. A conclusion that Adams' motions in filed in the debt collection case or her first email to Neal's attorney was the "initial communication" that triggered her obligation to provide a verification rights notice is well-grounded in the text of the FDCPA and precedent from the Circuit Courts cited.

The Court should deny Adams' motion to dismiss and allow Neal to litigate his claims through trial.

Corey D. McGaha
Ark. Bar No. 2003047
COREY D. MCGAHA PLLC
5507 Ranch Drive
Suite 104-D
Little Rock, AR 72223
Phone (501) 205-4026
Fax: (501) 367-8208
cmcgaha@mcgahalaw.com